Peyton Lee, OR SBN 164224
Assistant Federal Public Defender
Email: Peyton_Lee@fd.org
Michael Benson, AK Bar No. 1311070
Assistant Federal Public Defender
Email: michael_benson@fd.org
Fidel Cassino-DuCloux, GA SBN 40244
Federal Public Defender
Email: fidel_cassino-ducloux@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARIE GERTRUDE JEAN VALMONT,

Defendant.

Case No. 3:24-cr-00353-AN-2

MOTION TO SUPPRESS THE EVIDENCE OBTAINED BY UNLAWFUL SEARCH OF THE RESIDENCE OR FOR *FRANKS* HEARING

*Oral Argument Requested*

Defendant, Marie Gertrude Jean Valmont, through her attorneys, Peyton Lee, Michael Benson, and Fidel Cassino-DuCloux, respectfully moves the court to suppress the search of Ms. Valmont's home because the warrant for search omitted material facts critical to the determination of probable cause, and was therefore deficient under the Fourth Amendment. All evidence found and statements obtained as part of that search must be suppressed. Alternatively, the defense requests a finding that Ms. Valmont has made the substantial preliminary showing of

material omissions required for an evidentiary hearing on the validity of the warrant. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171 (1978).

The government objects to this motion.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Ms. Andre registered a business running Velida's Care Home as an adult foster home starting in July of 2022. Exhibit A at ANDRE_8523. The home was regularly monitored and supervised through the Oregon Department of Human Services ("ODHS"), including an initial inspection and ongoing follow-up inspections of the home. In 2023 and 2024, Ms. Valmont and Ms. Andre assisted in bringing family members Billy Marco Marc (later referred to as AW1 in the warrant application), his brother Mathisse Marc, his cousin Emmano Gusse, and Emmano's daughter Emma, from Haiti to the United States. Ms. Valmont and Ms. Andre initially housed and supported Billy, Mathisse, Emmano and Emma in the care residence with them, although Ms. Andre and Ms. Valmont eventually rented and paid for a separate apartment for them to live in. Exhibit B at ANDRE_753. In addition, Ms. Valmont and Ms. Andre helped sponsor AV1, AV2, and MV1 to come from Haiti to the United States in September of 2023. *Id.* at ANDRE_757. The three alleged victims lived in the adult foster residence until July of 2024. *Id.* at ANDRE_755.

An affidavit for a search warrant for the residence was submitted to United States Magistrate Judge Jolie Russo by Task Force Officer ("TFO") Yonsoo Lee on August 28, 2024. Exhibit B at ANDRE_772. The affidavit submitted in support of the warrant alleges that on July 10, 2024, there was an Oregon Department of Justice referral for assistance in investigating allegations of indentured servitude. *Id.* at ANDRE_751. While at Oregon Health & Science

University ("OHSU") receiving medical care on July 2, 2024, MV1 had alleged that she and her stepmother were involved in indentured servitude at the Care Home. Exhibit C at ANDRE_26-28.

TFO Lee reported that on July 15, 2024, Billy Marco Marc (now AW1) reported to Tigard Police Department that his wife, Ms. Andre, and his paternal grandmother, Ms. Valmont, exploited their employees while he and his brother were living at the residence. Exhibit B at ANDRE_752. Mr. Marc alleges, and TFO Lee reports, that "local law enforcement have been to the house on a number of occasions," and that Ms. Andre wished to "limit the possibility of police coming across people in the home" which is why she rented an apartment for AW1, his brother, his cousin and cousin's daughter. *Id.* at ANDRE_753. He also reported that he wished to divorce Ms. Andre, but that she was refusing and threatening him with deportation. *Id.*

The affidavit then outlines TFO Lee's initial review of ODHS records for the residence, as well as a second interview with Billy Marc, which prompted him to interview AV1 and AV2 based on Mr. Marc's report that they had made allegations of exploitation. *Id.* at ANDRE_755. TFO Lee interviewed each of them on July 24, 2024. *Id.* at ANDRE_755-59. He later observed a Child Adolescent Forensic Interview of MV1 on August 21, 2024. *Id.* at ANDRE_759-63. Each made claims relating to indentured servitude.

The warrant was signed by Magistrate Judge Russo on August 28, 2024, and was served on the residence on August 29, 2024. Documents, phones, and an iPad were seized during service of the search warrant, and various interviews were conducted, including of Ms. Andre. An indictment was subsequently returned on September 17, 2024, against Ms. Valmont and Ms. Andre for allegations of forced labor. ECF 1.

The following information was not incorporated into the affidavit for search warrant submitted to Magistrate Judge Russo:

First, the Tigard Police Department (where TFO Lee is a detective) had in fact already responded to MV1's allegations of abuse. An officer had gone out to the residence in person, two days after the report was made by MV1 at OHSU (and more than seven weeks before the affidavit for search warrant). Tigard Police Officer Byerly went to the Care Home to conduct a welfare check in response to the allegations and spoke with Ms. Andre and Ms. Valmont at the house about the claims. A full copy of the interview is contained in Officer Byerly's Body Worn Camera footage from that day. Exhibit D, ANDRE_512. The officer wrote in his report that Ms. Andre "was willing to answer all questions." Exhibit E, ANDRE_17. The officer concluded that the allegations might have a lot to do with the alleged victim's seeking to obtain a green card. Exhibit D at 21:04 (Officer Byerly: "[I]t's a weird situation and I think it has a lot to do with being a green card."). The beginning of his report indicates it was forwarded to Detective Lee. Exhibit E at ANDRE_17. The interview with Ms. Andre and Ms. Valmont was conducted on July 4, 2024, and was discussed with TFO Lee on July 10, 2024; the report was received and documented on July 16, 2024. Exhibit F, ANDRE_16.

Additionally, prior law enforcement contact with the residence, once again by the Tigard Police Department where Detective Lee works, had been *initiated* by Ms. Andre *against* Billy Marco Marc four days prior to Billy Marc's first report to Detective Lee. Contrary to the implication that Ms. Andre and Ms. Valmont wanted police to stay away from the residence, or that Ms. Andre and Ms. Valmont were keeping Billy and others away from police, Ms. Andre had in fact called Tigard Police Department to come out to the house because of harassment by

Billy Marc and his relatives and their refusal to leave the residence. Incident logs from July 11, 2024, indicate that Ms. Andre called reporting that they would not leave, were harassing her and her mom (Ms. Valmont), and that she wanted all subjects (Billy, Mathisse, Emmano, and Emma) to leave the residence. Exhibit G at 2. Tigard Police responded to the residence on July 11, 2024. These reports would have been readily returned by any search of Billy Marco Marc, Ms. Andre, Ms. Valmont, or the residence address, and are, to the defense's knowledge, the only law enforcement contact with the residence to which the affidavit could have been referring.

Further, not only had Billy Marc not been threatened to prevent a divorce he wanted, but a petition for divorce between Mr. Marc and Ms. Andre had already been signed by both parties and filed in the court records before the interview between TFO Lee and Billy Marc occurred. The divorce petition was publicly docketed July 11, 2024, and bore signatures dated July 10, 2024. Exhibit H.

Also publicly filed before the second interview with Billy, and unreferenced in the affidavit, is Ms. Valmont's petition for a restraining order against Billy Marco Marc. Exhibit I. Ms. Valmont filed a petition on July 18, 2024, describing physical assault by Billy, his brother and cousin. *Id.* at 3. The Washington County Sheriff's Office had served the restraining order petition and notice on Billy Marc on July 22, 2024, at the same apartment residence that he had previously given. *Id.* at 34. Ms. Andre also obtained restraining orders against Billy Marc, Mathisse Marc, and Emmano Gusse on July 18, 2024. Exhibits J, K, L.

## APPLICABLE LAW AND ANALYSIS

### I. An Affidavit That Deliberately or Recklessly Omits Material Facts Cannot Support a Warrant Under the Fourth Amendment.

Under the Fourth Amendment, people have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. "The probable cause standard for a search warrant is whether, based on common sense considerations, there was a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014) (citations and internal quotation marks omitted).

To challenge a search conducted pursuant to a warrant, a defendant must make a "substantial preliminary showing" that (1) a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56.

The Court extended the *Franks* standard "to omissions of material facts and concluded that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992) (citing *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)). "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Stanert*, 762 F.2d at 781.

In assessing whether the facts omitted from the warrant affidavit were material, the question is whether the officer "omitted facts required to prevent technically true statements in the affidavit from being misleading[.]" *Ruiz*, 758 F.3d at 1148. "An officer presenting a search warrant application has *a duty* to provide, in good faith, *all relevant information* to the magistrate." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (emphasis added) (citing *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006)).

Ms. Valmont acknowledges that the defendant "bears the burden of proof," *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002), and "must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).

## II. Ms. Valmont Has Made the Substantial Preliminary Showing Required for Suppression or a *Franks* Hearing.

### A. Material Information was Omitted by TFO Lee in Seeking the Warrant.

Ms. Valmont has made a substantial preliminary showing sufficient to support a *Franks* hearing. Importantly, a substantial preliminary showing does not require "clear proof." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005) ("Our case law does not require clear proof of deliberate or reckless omissions or misrepresentations at the pleading stage."); *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007) ("[C]lear proof . . . is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing."); *United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) (same).

Here, TFO Lee omitted facts he personally knew. On July 10, 2024, the same date the affidavit gives for the Oregon Department of Justice referral, Officer Byerly discussed with TFO Lee the welfare check he had conducted at the Care Home six days earlier in response to MV1's

allegations, and Byerly's report was forwarded to TFO Lee and documented on July 16, 2024. Exhibit F at ANDRE_16. TFO Lee signed his affidavit seven weeks later and disclosed none of that report or investigation. He left out that Tigard Police Department had already responded to MV1's allegations by interviewing both co-defendants at the home, that the responding officer recorded that Ms. Andre was "willing to answer all questions," and that the officer observed on camera that the allegations likely had "a lot to do with . . . a green card." Exhibit E at ANDRE_17; Exhibit D at 21:04. There is no basis for omitting an interview with both co-defendants, about the specific allegations for which the government is trying to establish probable cause, in which the defendants were cooperative, helpful and responsive, except to prevent the magistrate judge from discounting probable cause for the warrant.

Additionally, TFO Lee left out the prior police contact at the residence in which Ms. Andre and Ms. Valmont sought a police response to remove Billy Marco Marc and other adults from their residence due to harassment. Mr. Marc is central to the affidavit: he is the initiating adult witness, the only witness TFO Lee interviewed twice, and the source of the first reports of AV1's and AV2's claims of indentured servitude. Any information known to TFO Lee bearing on Mr. Marc's credibility should therefore have been incorporated into the affidavit. The affidavit goes beyond omission: it affirmatively incorporates vague references to law enforcement contact with the residence, implying that the *defendants* were under the watchful eye of law enforcement, when in fact the declarant the affiant relied upon was himself the subject of a police report made by the defendants, who sought help in removing him from their home.

In addition, it is not clear whether TFO Lee simply failed to do any further investigation into Mr. Marc and was unaware of the already filed divorce and restraining order petitions;

however, such publicly filed court documents present a sufficient basis to support an evidentiary hearing regarding whether this constituted a reckless disregard for the truth, or whether it was in fact a knowing or intentional omission at the time the affidavit was provided. Ultimately, the critical information omitted from the affidavit would have reframed the credibility of AW1's central allegations, as well as the cooperativeness and conduct of the defendants, and helped recast the allegations as largely a domestic dispute or, alternatively, unsubstantiated accusations raised for potential immigration benefits, as the responding officer's own contemporaneous assessment suggested. Such questions are for a magistrate judge to weigh and balance, not for a case agent to predetermine by omitting critical exculpatory information from the affidavit. Suppression, or alternatively a *Franks* hearing, is therefore required.

**B. The Affidavit, Corrected to Include the Omitted Facts, Does Not Establish Probable Cause.**

Materiality is tested by reconstructing the warrant. The court adds the material that was omitted and asks whether the affidavit as corrected would still have supported the magistrate judge's finding of probable cause. *Stanert*, 762 F.2d at 782; *DeLeon*, 979 F.2d at 763. If it would not, the warrant must be voided and the fruits of the search excluded. *Franks*, 438 U.S. at 156.

The affidavit submitted rests centrally on the credibility of AW1 and MV1's reporting. The fact that MV1's claims had in fact already been investigated by Tigard Police Department raises significant credibility issues, especially in light of the interview conducted with both codefendants. Additionally, Billy Marc's credibility is core to the assessment of probable cause. The July 24, 2024, interviews of AV1 and AV2 occurred only because he identified them and claimed they were making allegations. He is the only adult witness TFO Lee interviewed twice, he supplied allegations coloring the conduct in the home by implying that there had been regular

law enforcement contact with the residence, and he added the claims that Ms. Andre was engaging in threats and trying to keep police away from viewing the home.

Incorporating the omitted facts undermines any finding of probable cause. The corrected affidavit would have told Magistrate Judge Russo that the affiant's own department had already responded to MV1's allegations on July 4, 2024, had interviewed Ms. Valmont and Ms. Andre at the home, had found Ms. Andre willing to answer all questions, and had come away attributing the allegations to an immigration motive. Second, the law enforcement contact the affidavit invokes as evidence of nefarious or concerning conduct by the defendants, was in fact contact Ms. Andre herself requested when she called Tigard Police to the residence on July 11, 2024, to remove Billy Marc and his relatives for harassing her and Ms. Valmont and refusing to leave. Finally, Mr. Marc's claim of a refused divorce and threats by Ms. Andre is again contradicted directly by a publicly filed divorce petition on July 11, 2024, four days before he made the claim. Additionally, the interpersonal dynamics are significantly colored by the presence of restraining orders *against* Mr. Marc by Ms. Valmont and Ms. Andre; By July 18, 2024, both defendants had petitioned for restraining orders against him for physical assault, and he had been served on July 22, 2024, two days before TFO Lee interviewed the witnesses Mr. Marc had named.

As a result, a Court would not conclude that there was probable cause that forced labor was occurring at a licensed and regularly inspected adult foster home. *See Ruiz*, 758 F.3d at 1148. It is a household dispute in which the government's originating witness was openly lying about his relationship with Ms. Andre and Ms. Valmont, was the respondent to two restraining order petitions, and was the subject of a police complaint the defendants had filed against him. Additionally, the one allegation police had investigated independently of Mr. Marc had left the

investigating officer doubting its credibility. A magistrate judge presented with the full record would not have found probable cause.

The problem is not omission alone. The affidavit put the law-enforcement-contact detail to affirmative use, presenting police attention to the home as a sign of criminal conduct, when the full record shows the defendants calling the police for help. That is the "manipulat[ion of] the inferences a magistrate will draw" that *Stanert* forbids, 762 F.2d at 781, and the failure to "prevent technically true statements in the affidavit from being misleading" that *Ruiz* condemns, 758 F.3d at 1148. Because the corrected affidavit would not establish probable cause, the omissions were material and the evidence must be suppressed.

At a minimum, Ms. Valmont has made the substantial preliminary showing that entitles her to test these facts at a *Franks* hearing. *United States v. Kyllo*, 37 F.3d 526, 529-30 (9th Cir. 1994) (holding *Franks* hearing was required when material facts were omitted that substantially undermined probable cause of the search warrant).

**C. The Good-Faith Exception Does Not Save The Warrant.**

The government cannot rescue the search through the good-faith exception. Under *United States v. Leon*, 468 U.S. 897 (1984), good faith is unavailable where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923. This raises the same *Franks* standard articulated above. Good faith is measured objectively, *id.* at 922 n.23, and no reasonably well-trained officer could have believed that an affidavit omitting his own department's prior response to the same allegations, the police complaint the defendants had

filed against his central witness, and two publicly docketed proceedings contradicting that witness's principal claims, fairly presented the facts to the issuing magistrate judge.

**D. The Remedy Reaches the Items Seized and Ms. Valmont's Statements.**

Suppression extends to the derivative fruits of an invalid search. Officers seized documents, phones, and an iPad from the residence and conducted interviews there during execution of the warrant. Evidence obtained by exploitation of an unlawful search is inadmissible as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). Because the officers were inside the home only by virtue of the warrant, the items seized and any statement by the defendants made during the search are products of the same illegality and must be suppressed.

## CONCLUSION

For the foregoing reasons, the Court should enter an order suppressing all evidence obtained from the search of Ms. Valmont's home or, alternatively, granting a *Franks* hearing to assess the validity of the warrant.

Dated: September 23, 2026.

*/s/ Peyton Lee*
Peyton Lee, OR SBN 164224

*/s/ Michael Benson*
Michael Benson, AK Bar No. 1311070

*/s/ Fidel Cassino-DuCloux*
Fidel Cassino-DuCloux, GA SBN 40244